May it please the Court and Counsel, thank you for the opportunity to be here today to ask this panel to overrule the ERISA decision in Pierre v. Connecticut General, which held that the default standard of review in ERISA cases for factual determinations is abuse of discretion. As the panel concurrence recognized, ERISA cases may not be headline-grabbing, but they are important to millions of Fifth Circuit residents who obtain health, disability, or retirement benefits from their employers. The standard of review in an ERISA case is critical to ERISA participants and beneficiaries as it is often outcome determinative. The deferential standard of review, which allows a plan's fiduciary's factual determination to stand simply because it is on the low end of reasonableness, means that many Fifth Circuit residents have been subject to benefit denials which are plainly wrong. Now in Pierre, a panel of this Court interpreted the Firestone decision as mandating a default de novo standard of review only for plan interpretations and held that the default standard of review for factual determinations was abuse of discretion. May I ask you a question, Ms. Cantor? Has anyone done any empirical research concerning the degree to which our standard has led to different results? No one has done any empirical research in the Fifth Circuit, but most practitioners will tell you that there is a difference in results. And there is some research that was done by the National Institute, sorry, National Association of Insurance Commissioners, which supports the view that de novo standards of review more often favor the claimant, the participant. Do you have any cases that support your statement that there is a difference in the application  I'm sorry. There is a difference in results. Do you have any individual cases, district court cases, that you would cite that show that clearly and plainly a different result would have been obtained under a different standard? There are many cases around the country that where courts have expressed that they would have reached a different result had the standard of review been de novo. But I ask you, do you have any of those at hand now, or is that you're just making the broad statement that there are cases out there somewhere that you are unaware of by name? Yeah. I can offer the court a list of those cases. I don't have them at hand. There is a case from the Southern District of Texas in which the district court judge was very concerned about the fact that he had to apply the abuse of discretion standard of review and indicated that he would have reached a different result. There are other cases that have applied the abuse of discretion standard and the de novo standard and have concluded that there's no difference in the result that I would have reached. No. Judge Rosenthal did. In this case, Your Honor? Not in this case, but in earlier cases. I mean, I just noticed that there are cases that do hold that there is essentially no difference in the outcome, irrespective of the standard of review. That is true. There are cases where judges have said, I would have reached the same result regardless of the standard of review. So it's a mixed bag. It's a mixed bag, however. We know from the standard that when you're looking at a decision and determining only whether it is reasonable versus whether it is right, the participants lose. Why is it— Well, in every case, in every case that comes up, the participant has lost. Otherwise, it would not be appealed, correct? True. So it's stacked in that respect as well. I mean, in terms of what the outcome may be, the patient is always the loser when it comes to us. So, I mean, it's— Well, most of the time, that's true. There'd be no reason for the administrator to appeal. Not when they win. No. Well, no, and not when they grant benefits. But administrators appeal when they lose. And I would say— I mean, they appeal to this court, but not to the district court. Correct. We like to say in our office, you know, no one ever comes to our office to ask us to hire them because their plan paid their benefits. Those are not the cases that we see, of course. And then, you know, we don't know, but there may be thousands of those cases compared to ten that were not—that were denied, so we just don't know. Correct. But what we do know— Okay. What I think—sorry, Your Honor. No, go ahead. Oh, what we do know is that the standard that's currently being applied doesn't search for truth. It doesn't search for what's right. It only searches for what's reasonable. I don't—what is reasonable, but what is truth, is in the eye of the beholder. I mean, if we find as a court that the decision is reasonable and supported by substantial evidence, then that doesn't mean that the decision is stacked against the claimant. Well, I would disagree, Your Honor, because I'd like it to be in the eye of the district court, not in the eye of a conflicted plan administrator, because what happens is when you— No, but the Supreme Court has already made—I mean, we are required under the abuse of discretion standard to take into account a conflict of interest. That is true, and when the abuse of discretion standard applies, which it will apply in many cases still, then this court or district courts have to take into account the blood analysis and how much deference to give to a conflicted plan administrator. Counsel, is this case a case, though, that has a difference in outcome? I don't see that you argued in your brief that you win, that your client wins under the other standard. The other side argues that they win either way. So is this the case? And why didn't you address whether you win under de novo review? Well, the issue of whether we win under de novo review goes to the district court. Why? Why wouldn't we just wrap it all up in a bow and finish the case if we have all the record and everything? Because you don't have all the record, Your Honor, and that's one of the problems, because these doctors who reviewed on behalf of the plan administrator never looked at any medical records. Right. But what did you say that you needed to put in that you didn't get to put in? Where is all of that briefing? Well, what we briefed to the original panel was that we had evidence that the ultimate decision maker was not qualified to make that decision. We had a deposition we wanted to use where we investigated the credibility and the qualifications of that doctor, which the district court would not consider. So that is very important, I would say, in either type of review, but certainly in de novo. I'm sorry? Go ahead. Finish. So that is one issue. So you want a deposition. If there's a deposition that you believe should have been looked at, is there anything else that should have been looked at that was not looked at in this case? The medical records. All right. In Vegard, we said that the case must be decided on the basis of the administrative record, that the claimant makes his administrative record, and if after the decision of the administrator it is unhappy with it, it has a right to submit additional evidence, and it can submit additional evidence up until the time of litigation. And whatever you want to put in the record and let the administrator consider it, you have the perfect right to do that. And then that record, I mean, if you had some question about the doctors here, you could have raised that at the administrative level, but it was not raised at the administrative level. Well, Your Honor, here's the problem. These plan administrators control the way in which they make decisions and what information they take in. I would submit to you that a plan fiduciary should not be making significant decisions about a mentally ill young woman without looking at medical records, but they did, and that's fine. However, in a de novo standard of review, the district court is able to take in additional evidence that the district court may find would inform the decision to reach what is right. Okay. Tell me what you mean by de novo standard of review. As I understand what you're saying, de novo standard means that the district court is entitled to re-litigate the entire matter, that you can take any number of depositions that you want to take, that you throw it open completely to a trial before the district court. Is that essentially what you're saying de novo means? No, Your Honor, and it also depends on the circuit, and this circuit will have to develop what a de novo review is going to look like, but it's not much different because the big difference is, are you deciding whether the plan administrator was right or reasonable? Let's put that aside for a moment. You start with the administrative record, as you do with an abuse of discretion standard. Now you don't have to figure out anymore what's a factual determination and what's a plan interpretation, because that will be off the table. You won't have to, the district courts will not have to do conflict discovery or determine what kind of conflict discovery is available, because the Glenn analysis is off the table. The district court will decide what it needs, besides what's in the record, to make a determination, and it's not dissimilar for what happens in an abuse of discretion case. For example, if the record's not complete, if the district court feels like medical records should have been considered or submitted, the district court can look at medical records. Can you concisely define what de novo means? We have clearly defined it, for example, in Pierre, I believe, is actually, in which we can define specifically what the abuse of discretion is, and it's that the factual, we hold that the factual determinations of ERISA, under the abuse of discretion standards, is the appropriate standard, and that is that federal courts owe deference to the administrator's factual conclusions that reflect a reasonable and impartial judgment. And after, and taking that in connection with Vega as well, where you can put anything you want to into the record that the district court will look at, that is a precise definition of what abuse of discretion is. Can you tell me precisely what you are arguing for and how you would define de novo review as it applies in your case? De novo review would be the district court deciding whether the denial was correct or not. No. From a standpoint, from a procedural standpoint, because you are aware, I'm sure, that some circuits have said that the parties are confined to the record before the administrator, and some circuits have said that only in very limited, very limited circumstances does the unless we change it, which is the only way that your client is going to get relief here, we are confined to the administrative record. So which is it? Are you confined? Are you partially confined? Are you not confined? A, B, C. B. It's up to the district court to decide how to run the truck. B. So you are not confined then. It's completely open for the district court is what you are saying. So that's not confined. Well, if I didn't understand your B, I'm sorry. I'm saying that district courts get to judge. They judge who is right and who is wrong. And they can use whatever they want to use, whatever they think is relevant evidence. It's totally open, the whole world, new experts, new everything, and there's no limits. Why isn't this trial just like a breach of contract case? You look at what the parties did and decide if there was a breach of contract or not. You don't start negotiation. I mean . . . It is like a breach of contract case, but sometimes in a breach of contract case, a judge needs, because these are medical issues, expert advice on how to determine the medical issues. Well, it seems like to me it's up to the claimant to put whatever they want to put in front of the administrator. The administrator looks at whatever they look at and then the judge decides based on what the parties offered to each other, did one side or the other breach? Was there a breach? I mean, why isn't it you just look at what the parties looked at at the time and decide given the state of the record on which they acted, did somebody breach? Because in a breach of contract case, the judge doesn't look at only what the parties presented to each other. The judge may look at other things that inform whether there was a breach. And this is the same thing. Most de novo trials end up being very similar to abuse of discretion trials, because as I said, you start with the record and then the district court gets to decide what else he or she needs. But I don't think that it's . . . I don't think that that should be a problem because district courts know how to do that. Let me ask you, in this case, were you denied the opportunity to put into the administrative record everything that you wish to put in the record at this point? Not at the administrative level, but . . . But you did not give it to the administrator. Well, except for the fact, Your Honor, that the only thing that could have been given to the administrator was up to the point of denial. The records from June through September are informative of the issue of whether the denial on June 4th was proper. Vega says you are fully . . . you have the full opportunity to present any additional evidence that you want to to the administrator if you are not satisfied with his decision. You could have submitted all of the experts that you have now at that point. You could have attacked his decision in any way and then that full record would have come to the district court who would have reviewed the record, would have heard your arguments and would have heard your experts and make a decision there. What precluded you from doing that? Well, I can tell you as a practical matter, Your Honor, administrators do not take information after the last appeal. The curtain closes and information is not considered. Whatever Vega says, the practical reality is, it does not happen. You could have made your record. Yes. And if the administrator does not reconsider, he is in conflict with the authority of this court's in-bank decision in Vega. So I can't help it if the administrator doesn't follow the law. That's all we can do is write it. It's up to you to make him follow the law. You're saying that the district court would have the opportunity to have new witnesses or new evidence? Is that what you're saying? If the district court . . . Who's going to pay for that? I'm sorry? Who's going to pay for that? Well, there's one example in the Ninth Circuit in Walker where the district court judge hired an independent medical expert because the district court judge felt that that was necessary. I assume both parties paid for it. Who? I assume both parties paid for it. No, no. The district court decided, no, there's no indication in the decision. And what is your position today as to who would pay for it? My position is that if the plaintiff wants an expert, the plaintiff pays for it. No, we're talking about the use of the district court . . . Yes. . . . would have the opportunity under your scenario to have new evidence, new witnesses, new expert, new doctor. Who do you think is going to pay for that? For the experts, Your Honor, or for the cost of the trial? I'm not understanding the question. For the cost of the new evidence, the new . . . Whoever presents it. . . . you need another doctor. The court-appointed expert. The court-appointed expert. If there is one. It depends on . . . I mean, in my experience, I can tell you that the parties usually pay for it. They split the cost. Do you concede that you lose if we stick to this record? Because . . . and is that really the reason you didn't brief it at all in response, even     I don't. I don't. I don't. I don't. I don't. I don't. I don't. I don't. I don't. No, Your Honor, not under DeNovo. How do you win on this record under DeNovo? And since you didn't tell us in any of your briefs how you win, how do you win under DeNovo? We win under DeNovo because the ultimate decision-maker, Dr. Hartman, was not qualified to make the decision that he made. We win on this record because . . . Okay, but you have the affirmative burden to show, not just that there's something wrong with Arianna M., and I respect that she had challenges, but that she required partial hospitalization treatment as opposed to intensive outpatient or something else. What affirmative evidence, not just debunking their evidence, but what affirmative evidence do you have of that if we are limited to the administrative record? The affirmative evidence that we have are the medical records that demonstrate that at the time of the denial, she was incapable of functioning outside of a partial hospitalization setting. If . . . Am I wrong? I thought that Arianna's expert and the insurance expert both agreed that further intensive hospitalization would not help. No, that's not true, Your Honor. Okay. If this court were to accept your arguments and the district court has some discretion in determining whether it can accept new evidence or not, would that require this court to set up some sort of standard that guides the district court as to how far they can go in establishing or hearing new evidence, and what would that test or standard be as to how far can the district court go in hearing new evidence? Most circuits accept the rule from the Fourth Circuit established by the Quisenberry case that says that there need to be exceptional circumstances to supplement the administrative record or a need by the district court for assistance in reaching the decision before him or her. With 30 seconds left, if I understand all the questions you've gotten, they all relate to assuming you win, what happens? So if you, in 30 seconds, could explain why we should reinforce, reaffirm Pierre or not, as opposed to what the consequences would be and whether evidence could be taken. A few minutes or whatever. In 10 seconds. The Pierre decision, there's actually seven reasons why the Pierre decision is wrong. I think it misreads Firestone. I think we have to look at the subsequent Supreme Court cases, like Glenn and Moran. I think its analysis of trust law, although it might have been right about the default standard in trust law, Firestone reversed that default standard to DeNovo, and its distinction under trust law between factual and legal determinations does not stand. I think the number four, the analogy to administrative hearings doesn't work because plan administrators are conflicted, and they're not subject to the same constitutional procedures or expertise that administrative agencies or district courts are. You've reserved some rebuttal time, so why don't you plan to finish up with that? It may be that it all will get down to seven. I note that Mr. Hahn has some time on this side of it, so we'll hear from him, but you do have your rebuttal time intact. What number were you at? Four. I was on four. If you could just, with the Chief Judge's indulgence, just quickly tick off the last three. There hasn't been a difficulty of DeNovo review in other circuits. I think uniformity among the circuits is important. And finally, the protection of participants and beneficiaries. They had a better standard of review before than they have under Pierre. All right. Thank you. Mr. Hahn. Good morning. Jeff Hahn for the Secretary of Labor. I'd like to start by addressing some of the questions that were asked of Ms. Cantor. The first question related to the administrative record. As I understand this Court's case law, changing the standard of review to DeNovo, it is not at all clear that that would expand the administrative record rule. This Court has a case called Estate of Bratton, which was a DeNovo case, where the Court applied its general administrative record rule, restricting the Court to the administrative record. How can you say that when the counsel just argued that she was for open administrative record? I think there are other circuits that have developed that rule, where DeNovo sort of opens the floodgates. But this is a point of dispute between you and the plaintiff then, correct? I'm not sure what exactly Ms. Cantor's position is on this. I'm just referring to this Court's precedent, which indicates, at least in this Estate of Bratton case, that the general rule of administrative record review applies. What is the position of the Department of Labor in this case? How do you define DeNovo review? And are you for opening up the administrative record at the discretion of the district court? The Department of Labor does not have a position in this case on the open— What did you come down here arguing for? We don't have a position on whether the administrative record can be opened or not. I think our position on DeNovo is simply that— Why wouldn't you have that? You are arguing in a case where that is one of the issues. Why wouldn't you have a position on it if you're arguing the point? It seems to me that they sent you down here to state the position of the Department of Labor. We don't weigh in on every issue in the case. We had certain issues that we were focused on, and I'd say that— What is your interest in this case? I mean, what is your position as to how we should rule with respect to the DeNovo standard and what does that mean to the Department of Labor? In terms of the meaning of the DeNovo standard, as far as I understand it, is that simply it's just a function of the court, after reviewing the administrative record, if that's what the court's rule is in this circuit, it would just use its own best judgment in determining whether or not the decision was correct. Are you for opening up to a new trial, if necessary, in the discretion of the judge? Your position is no different from the plaintiff itself. Is that correct? Again, we don't have a position on whether the standard in any way changes the administrative record rule. Like I said, in this circuit, it looks like you apply the same rule regardless. But you just said that it would be up to the district court to make a determination as to whether it wanted to take new evidence or not under the DeNovo review that you were advocating. You just said that. I just said this court, after reviewing what's in the record at the very least, would then use its own best and honest judgment. So you're for opening up the record? Not necessarily. No, I'm not saying that. Does the Secretary of Labor have a position on their secondary point, which is that Texas can dictate the standard of review? She cites the Hono Nation. Do you embrace that or not? No position on that issue as well. No position either. Mr. Hahn, oh, jeez. Oh, the Supreme Court has denied cert twice in the past six years on whether Pierre is consistent with its case law. Did the Secretary of Labor weigh in on either of those cert denials? I'm not sure if we did. I know the first one was back in 1991, but I would say that— No, no, no, no, no. There's been one in 2014 and one in 2010 or 11. Yeah, I'm not sure if the Department of Labor had a position in those cases. Well, I mean, so if it's such a burning issue, why did the Department of Labor wait until 26 years later? Well, I just can't answer the question whether or not we waited or not. But I will say it is a very important issue to the Department of Labor, and I'd like to actually focus on— Why wouldn't you know the answer to that question? If you represent a department, you file an amicus here, I mean, you're not burdened by the record, but on the quintessential legal issue, why wouldn't you know the answer to whether the department did or did not and what position it took on the cert? Not that it's dispositive, but it's a little curious. You don't know the answer. Yeah, I just don't know the answer to that question, whether we weighed in or not. Well, let's just say for future purposes, it might be a good idea if you're coming in on a rifle shot issue to kind of know all that embraces that. You get some play with the facts because you don't care who wins, but if you're coming and we grant you amicus to file and we grant you amicus to argue, it ought to at least be aimed at those issues that nobody else in here would be able to provide the answer. Do you follow me? Yes, I do. All right, keep moving. Certainly today I can say that it is certainly our position that the standard of review for fact-finding should be, the default standard should be de novo, just as it is with plan interpretations. I'd like to focus. What do we do as we decide whether to develop some new approach with comments about the Supreme Court, at least in Glenn and later cases, that they are, we would not want to see a near universal review of a risk of decision-making de novo? And so there's a pushback from the Supreme Court, in part at least, of what's being argued here. The Glenn case involved a situation where the plan had an operational discretionary clause, in which case the standard of review is abuse of discretion. The issue there was whether that standard of review should be tempered or not, and the court said that, or whether it should be de novo in those situations where the administrator has a conflict of interest. The court said that you should just temper the deference given to the administrator and not replace it with de novo review, because otherwise, because so many administrators have conflicts, otherwise you'd have universal de novo review, but it sheds no light on the question of what happens in situations where the plan does not contain an operational discretionary clause. Well, if it sheds light on how it would work, but it does shed light, the Supreme Court seems hesitant to have de novo review. You want to cabinet just into situations where the discretionary may already have existed for some reason, but I think that can be read more broadly, and I was wondering if you had a broader comment on how to balance these interests. Well, I think the standard of review under Firestone is a function of the plan, and the plan can accord discretion or not accord discretion. I don't think the Supreme Court has a preference one way or the other whether every plan of the country has a clause or not, and the point is, in the absence of a discretionary clause, the standard of review should be de novo. All right, Mr. Tan, you've got a red light, sir. All right, shift gears. Jimana, Mr. Soltero. Please support, counsel. Carlos Soltero, it is my honor to be before this panel representing Jimana in this case. No domestic public policy issue has received more debate over the last decade than the cost of insuring health care. The proposal that appellant brings in this case proposes an approach that increases costs, further burdens already burdened federal courts in this circuit, and has no support for a better result. This does not serve or further sound public policy goals. Appellants want the court to overturn a settled standard of review in this circuit that in over 25 years Congress has not amended and the Supreme Court has never criticized. Mr. Soltero, given what you've just told us about the interest that we should be examining, assume we accept that. Assume for sake of argument that we decide that Pierre should be overruled. I understand that you're going to argue that that shouldn't happen, but the fact that we're in bank here must indicate that there's at least a substantial chance that that will occur. Based on the interests that are to be served that you've described, assuming that we overrule Pierre, help us as an officer of the court, what constraints or directives, if any, should we announce to guide the district courts under a post-Pierre regime? Your Honor, you're absolutely correct that I'm going to advocate against that. But given your question, I would suggest that vega remain the law, that de novo review should still be anchored if the court were to decide to overturn Pierre on the record, the administrative record, and only in the rare exceptions like vega has outlined should there be any discovery. Of course, biased discovery would be irrelevant in a de novo standard. So I don't know if that answers Your Honor's question. Your comments at the beginning about costs to parties and burden on the courts, we don't have to speculate about what de novo review would look like because we have at least eight other circuits that have followed it for more than a decade. Do you have any empirical data or other authority that would show what those costs have been and what the burden on those courts has been compared to in our circuit? Your Honor, we have no empirical data. I don't think any of the parties have empirical data on that point. I will note, as counsel for the appellant noted anecdotally, that it's like the FLSA cases where there's an incentive to shift fees at times. There can be more time-consuming and more expense involved. Also, the plan is at the center of a risk that the congressional intent is to have a very limited quick denial of benefits. The Supreme Court in Heneshoff indicated that judicial review is not going to be preferred over internal review. Those are all costs that are going to be additional under a de novo standard, even with a limited discovery. So if we overrule Pierre, do we have to remand for reconsideration under de novo review or can you win at this level, and if so, how? Your Honor, even if Pierre were overruled under de novo or any standard, we would prevail on this appeal. The reason is because the administrative record and the record developed in this case is crystal clear. Judge Rosenthal's opinion was very factually specific, careful. She didn't merely rubber stamp what Humana did. Under this record, under any standard, we should prevail, and I'd like to address that more specifically. By the way, I would also note that the panel opinion came to the same conclusion. Granted, they were looking at the abuse of discretion standard, but in no way did they criticize Judge Rosenthal's analysis or the facts in this case. I would note here that there were two board-certified psychiatrists. Let me ask you this. Would you concede that de novo review is proper to determine eligibility and to interpret the plan? Yes, Your Honor. And that what we are talking about is the everyday application of accepting, ruling on, dealing with the individual claims or entitlement. In this case, nobody doubts her eligibility. Nobody is raising an interpretation of the plan. They are only challenging the entitlement to the benefits that she claims and is eligible for. Is that correct? Yes, Your Honor. And that is the only thing that we're talking about, abuse of discretion. Yes, and I think it's important to note in hearing the conversation that what did Firestone do and not do? Firestone, we believe this circuit correctly read Firestone in Pierre, and it addressed, it wasn't on appeal, the issue of factual determinations. It was legal interpretation of the plan. In addition to that, Firestone could have, the U.S. Supreme Court could have, in Firestone or subsequently, said it's de novo all the way, what the appellant is arguing for. They have never done that. All indications are, as Judge Southwick indicated in questioning, that they wouldn't do that. And you never know what the Supreme Court is going to do, but all indications based on the cases is that they would not adopt universal de novo review, which is what's being advocated. What I don't understand is you all have taken the position that the Texas law is not preempted, correct? Your Honor, we never addressed the preemption issue. We think Pierre was so strong and clear. When I see Fifth Circuit opinion for 25 years that's uninterrupted on the federal standard, we didn't raise the preemption issue. I believe the Curtis case from the Northern District of Texas, Judge Boyle addresses some of the preemption issues. There are preemption concerns, but we just view this as an issue. In this appeal, we must assume that the Texas statute is not preempted and is fully effective, is that correct? That would be correct, Your Honor. And why isn't this decided under Texas insurance law, just like any other policy claim would be? Your Honor, because it's an ERISA claim, number one, and I think the panel opinion was exactly correct in looking at why the so-called discretionary clause ban is totally inapplicable. What we're looking at is a standard of review in federal court, which is not what the discretionary clause ban says. Well, if the Texas law is fully applicable, it talks about standards review on appeal. Why don't we apply the Texas law? Well, Judge, because the Fifth Circuit determines and federal courts determine federal standards in federal court, not state statutes. May I ask you a question about Firestone, a practical question? When the Supreme Court said that plans that contain discretionary clauses are to be reviewed under abuse of discretion, I would assume, am I correct, that there was a great incentive for most health and welfare benefit plans across the U.S. to go to discretionary clauses, is that right? That appears to be the case, Your Honor. That's right. So we are dealing with a remaining rather small subset of cases than except in the states that have this discretionary clause ban where there's no discretionary clause? Yes, Your Honor, and I think you've hit on a topic  If the Supreme Court of the United States has said you can have a discretionary clause in your contract and we will review for abuse of discretion, and frankly they look at the interpretation of the plan document under abuse of discretion in those cases, and it's certainly the case under the Deamer Clause for self-funded plans, then you have this weird anomaly where states, less than half, are somehow able to prevent plans from availing themselves of Firestone. And it seems like an odd and inequitable result. Well, and then you also have the anomaly, am I correct, that do the court circuits where the abuse of discretion clause is applied to plans with discretionary interpretation, is that applied to the facts as well as the law? Yes, Your Honor. So, again, we're talking about a subset of plans that don't have a discretionary clause. Or where the statute prevents it. Right, so even in the circuits that say there's de novo review where there's no discretionary clause, someone could easily have done empirical research to see whether the outcome in those very circuits was any different other than this, you know, I'm told this and that subjective view. Yes, Your Honor, I think that research could have been done. I'm unaware of it having been done. Counsel, can you... You had a discretionary clause, you just chose not to stand on it. Yes, Your Honor, because we thought... I guess you didn't want the Texas Insurance Commissioner coming after you. Your Honor, we thought Pierre was so clear that there was no reason to... I think my reasons are right. Counsel, can you please return to answering the question about why you went under de novo review in this case? You were about a few minutes ago, you were going to tell us all the reasons, and we've never heard that answer. Yes, Your Honor, thank you. There were two board-certified psychiatrists who reviewed the relevant medical records and conducted peer-to-peer review. And I think it's important here to note that in these circumstances, the psychiatrists are actually in communication with the treaters at the time. And the treaters have every incentive to get paid. They're advocating to get paid for the benefits to be approved. And what the record shows on appeal, and I would specifically cite to the court record on appeal 599 and 639, that at the junction in question, after Humana had reviewed and considered and reversed actually a few decisions and allowed additional authorization, at the point in question, after 49 days of partial hospitalization, the psychiatrist determined that she was not motivated for treatment, she was not cooperating, she was medically stable and not a danger to herself and others, and that other types of treatment, as Judge Haynes raised earlier, were more appropriate and might have been covered under the plan. So in particular, those areas in the record, and you can see that the determination was not made without any regard, without any consideration. It was two different companies. ARM was the second reviewer. LifeSync was the first reviewer. And so through those thorough reviews, which Judge Rosenthal went through all that, as a matter of law, there's nothing to suggest that that was an incorrect result. It certainly wasn't an abuse of discretion and it wasn't incorrect. But what changed? And if I were your opponent, your opponent has not made this argument, but if I were your opponent, I would make the argument you've been paying benefits, you've been paying benefits, and what changed to make the nonpayment appropriate? What happened with Area M that would say, well, what we've been paying for, it ain't happening anymore? Your Honor, my understanding is the situation changed. I mean, there was a more acute serious condition initially, and that changed and stabilized, where, I mean, nobody's ---- Is that, if I look at this 599 and 639, will I see that? Yes, Your Honor. Okay. And specifically, they said, and I'm at 599 right now, based on the clinical information provided, the member did not meet the MHOLIC medical necessity criteria. Patient was not reported as being in imminent danger to self or others. Patient was not aggressive or threatening. There was no report of psychosis or mania. There was no report of medical instability. No new issues were reported. So what would you have paid for? I mean, just throwing her out on the street with no coverage at all doesn't seem appropriate here, so what would you all have paid for? I'm not seeing this as an all-or-nothing case between maximum care and nothing, but what does this suggest would be appropriate? Your Honor, I'm not sure that every issue got flushed out completely, but my understanding is that she likely could have qualified for less benefits, but they weren't requested. They were in Utah at this facility and wanted to continue on at that high level of treatment. So the discussion of intensive outpatient care or having a caregiver come in a certain number of times a day or, you know, whatever, that just didn't happen. That discussion didn't happen. Your Honor, I can't say that that did not happen. I'm not aware of it being in the record. But the portion you just quoted, was that an expert opinion saying her condition was better in a highly structured environment, or was that medical opinion saying her condition is better outside of the structured environment? That opinion was evaluating her condition at the time, and she was going for the partial hospitalization at the time, Your Honor. But the problem is you want to see continued progress, and what you're saying is she's not continuing to progress there. I mean, this happens with Medicare all the time. They give you this therapy, and then they go, okay, well, you got better, so now we're going to take it away. Is this a similar situation? She got to a point where she had gotten the benefit of the inpatient care and now needs to transition back. I mean, she eventually did leave this hospital, it appears, so you can't stay there forever, I guess. Yes, Your Honor. I would say it's not exactly like the Medicare situation that you mentioned, but it is a situation where when somebody is in for mental health, they've got to cooperate and participate in the treatment. And if they're not dangerous to themselves or others or meeting the criteria needed for that level of hospitalization, then— But isn't the problem with mental issues that not cooperating is part of the mental issue? It can be, Your Honor, but I think that there was a change in her behavior, which is what led to this determination. Counsel, did you have anything to say about opposing counsel's comment that the person who made this determination was not qualified? Yes, Your Honor. They're both board-certified psychiatrists, both the initial reviewer and the person who reviewed the appeal. And with regards to the issue of the deposition that counsel raised, that's in footnote 1 of Judge Rosenthal's opinion, where she excluded it and said that depositions from other cases involving a different party typically not admitted. But that was her ruling on the evidentiary issue, and I don't believe that they've challenged that as a specific point on this appeal either. There seems to me some tension in your argument. On the one hand, you're saying reversing Pierre is going to upend ERISA law and impose all these costs and burdens on the court. On the other hand, you're saying, well, the standard of review, it's really actually not going to make much of a difference. If the standard of review isn't going to make much of a difference, why are you vociferously trying to preserve Pierre? Why have 27 states banned discretionary clauses? Your Honor, I think that there's a distinction between this case and the law as a whole. I think Pierre's right, and I think that if the U.S. Supreme Court is very presumptuous to suggest what the court would say, but I think the indication certainly in their opinions are that they would seriously consider and maybe go with Pierre over what the other circuits have done. Putting that aside, in this case, I don't think the standard of review matters. I think this is a poor choice for trying to show that there's a different outcome under the two standards, because I think under any standard, we would prevail as a matter of law in this case. But do you think, putting this case to the side, do you think the different standard would impact cases on a broader scale? Somewhat, Judge. I think that there's a part of the Supreme Court opinion, Head Note 7, I believe, where the court says that this stuff is overblown as to certain of these types of policy concerns in these cases. I think we need to step back a second and say, what did the court do and not do? The court didn't abolish abuse of discretion. In fact, it embraced it. It said if plan administrators want to put that in their plan, then it's so easy. And that's actually why two of those circuits have disagreed with Pierre. The sixth and the second have said, we're concerned about the federal district judges, but we're okay with it because we know that it's very easy to just put a discretionary clause in the plan. Well, that's not possible if there's a statutory ban. So I do think that there is a—who pays for it ultimately? Ultimately, the plan and the beneficiaries. Because if you have more costs to the plan, I mean, it's not good public policy to— and that's why Congress created the scheme that it didn't erase. It's a limited context. It authorized plan administrators to make these determinations, and so we think it's well run the way Pierre had— Well, isn't part of the cost issue how far you go with the de novo, whether you limit it to the record before the administrator, whether you open it up to a full-blown brand-new experts and brand-new evidence and this and that? I mean, isn't that part of the analysis of cost and everything else? Yes, Your Honor. That's part of the analysis. I think that even with the vega standard of limited discovery, you're still opening it up and encouraging more litigation. You're encouraging, as I think Judge Jolly was pointing out correctly, that there are untold times when the benefits are granted,  but now you're going to create a system that sort of incentivizes any denial under a de novo standard. Mr. Soltero, the premise, not necessarily the outcome, the premise for the question is that we'll disagree and adopt a de novo standard with whatever limits there might be. If we go that way, would it be more appropriate to remand this to Judge Rosenthal or do you think we should be making that determination here? Your Honor, I think you all should be making the determination here. There's nothing, with all due respect to Judge Rosenthal, that puts her in a better situation than this panel to review the factual cold record when there's no additional evidence. I mean, that's why there's this deferential standard as to factual findings. Nobody has a right to get the law wrong, the plain interpretation wrong. But with regards to factual determinations, you all are in as good a position as Judge Rosenthal. But since this is a summary judgment, isn't it the question whether there's a fact issue presented? And if there is, we have to send it back. We don't get to decide facts. I appreciate the sentiment, but that's not the way it works. Your Honor, when there are no facts in genuine issues of material fact, the Court does— Isn't that the right way to phrase it? Yes, Your Honor. Rather than, oh, well, you guys can do fact finding just as well as Judge Rosenthal, which is I think what you just said. Maybe I misheard you. No, Your Honor. You did hear me correctly. That is what I said. You're correct in saying that the better way I should have said it is that there was no genuine issue of material fact in this case. However, I would say that the question on a policy level is do we do the reviews of a de novo by the trial court by de novo or abuse of discretion of the trial court? And it seems to me that I don't know why anybody would think it's okay for the district court to get it wrong any more than the plan administrator. Would it depend— One minute. In fact, Judge Southwick had a little bit on the tail end of the point, so I don't know if you want to finish before I come back. Thank you, Chief. Judge Haynes' question was able to pull out the additional answer I wanted. Thank you. Very collegially made. I guess— Yes, sir. My question is if there's a remand or not, would that depend on what standard is set with regard to whether there can be new evidence or not? If this court determines no new evidence on the record, then it's possible this court can make a decision. If this court leaves it open and it's a possibility that there could be new additional evidence, then we would have to remand? Your Honor, I think that's a correct assessment. I think in this record it's so clear that there should be a rendering, not a remand, because there's no genuine issue of material fact as to anything relevant to this ERISA issue. And as has been pointed out, the plaintiff appellant has had numerous opportunities to tell us what that issue of material fact is and somehow try to develop it. We are sitting here en banc and still not having any sense of what that would be. So under this kind of record, it should be an affirmance, not a remand for any reason. No. I mean, even if we concluded that new evidence is appropriate in a theoretical sense, in this case there's a summary judgment procedure. And if there hasn't been a motion to put on more evidence or something, because you raised the de novo issue. You said we went under de novo too, Judge, in your summary judgment. In response to that, if they think they need to go get more evidence, then they have to file a motion to put on more evidence or whatever or put the new evidence in and let the judge refuse to consider it. But there's none of that here. So as a matter of summary judgment procedure, even if we hold in future cases you get to put on new evidence, should we apply that here? Your Honor, I would urge you, what you articulated is exactly correct. I mean, they've had numerous opportunities to bring forth whatever they think that evidence would be, have not done so. Even on the bonk brief, there's nothing that they pointed to that indicates a genuine issue of material fact. What you all do going forward, I would urge you all to reaffirm Pierre, Before ERISA, health insurance plans, like any other insurance plan, were governed by state common law. And the Supreme Court in Firestone said ERISA was meant to provide more protections to beneficiaries than existed under the common law. So how is it consistent to do what Pierre does in deferring to the plan on fact issues like credibility determinations when you'd never get that under state law for insurance policies like auto policies or homeowners policies? Because as I think, and the panel's concurring opinion cited to Professor Langbein, and I think his article is very helpful in the framework of looking at this. It's really a hybrid or a blend of contract law, trust law, and sort of paternalistic federal protection of employees, which is appropriate. So if you look at it under those terms, Pierre's perfect because for the issue of law, as Judge Owen mentioned earlier, the contract interpretation, what happens under the contract, that is an issue of law regularly and routinely. With regards to factual determinations, because it's an ERISA plan where there's an intent by Congress to create these and to the whole Firestone conversation about trust law, you defer to the plan administrator, to the trustee on any number of issues. And so why is it different than a commercial plan? Because that's the way that ERISA has been set up by the Congress. Well, part of the ERISA policy that benefits beneficiaries is getting employers to do it in the first place, to provide group health coverage. I mean, putting aside the current debate about affordable care and so on in general, the whole purpose was to get employers to do this, to have group health. And part of that is creating some degree of certainty as how that's going to work. So that would seem to be an argument in favor of not allowing new evidence, because if you're going to be allowed to have new evidence, then there's no degree of certainty at all to how these plans are administered and how decisions are going to be reviewed, whether de novo or abuse of discretion. Because you can always find another expert to say something that no one said at the time. Is that a fair summary? That's a fair, Your Honor, and I think that that opens the floodgates to, you know, does a plaintiff get an expert, then the defendant has to get an additional expert, and then the court may want to appoint an independent expert. That's not what ERISA, I think, was envisioned and meant to be. And you're right, you don't want to disincentivize employers from providing that benefit. That's a joint benefit. The employer's benefit, but the employee's benefit. And by making it a standard case, you're taking it away from what Congress created. If ERISA, let me ask you, pause just a minute. If your view is correct, at least in limiting, if we decide to go de novo, there ought to be a limit to administrative record. Is there anything in ERISA itself other than the kind of policy arguments you've been making that would at least suggest that result, that it ought to be limited to administrative record in the statute? Your Honor, I have not gone back to the statute and parsed it for that very issue, but I believe that the statute, I mean, that's the nature of the statute is to create a system that is expeditious and that's efficient, that doesn't take us back to a standard commercial litigation. Didn't the Department of Labor have some regulations regarding minimum procedural standards, which I was unfamiliar with until I read the amicus brief? So it's not as if the administrator can do whatever he wants. There are procedures, right? There are procedures, and I'd be curious to study more how that's done in other circuits or in circumstances where abuse of discretion is applied based on the plan and there's no state statute. I think that there certainly are a lot of regulations that apply and a lot of requirements that the plan has. If the panel has no further questions, then I would yield the rest of my time. All right. Thank you, sir. All right. Ms. Cantor, you've got three minutes of rebuttal. Thank you, Your Honor. What we're asking for here is a determination by a district court as to whether the plan administrator was right or wrong. Counsel, Judge Haynes asked you to determine whether the plan administrator or asked the other side about that the district court record did not support that there was a genuine issue, material fact. Haven't you waived or forfeited the issue that there is a material issue of fact here when it's addressed in four of the appellee's en banc brief and you didn't file a reply brief and you didn't address it in your blue brief, that you have an issue of material fact that would require remand? Why haven't you waived or forfeited? I understand why you may not have preserved it in the district court and we talked about that, but haven't you also waived and forfeited it in the appellate court? No, Your Honor, because under a de novo standard of review, the first decision maker always has to be the district court because the issue before the district court was when Dr. Hartman said that this treatment was only for the convenience of Ariana M. Was that right or was that wrong? And that issue was never addressed. So putting aside whether we would want to submit additional evidence that we didn't try to submit already, the district court has to make that factual determination and decide whether that is a fact or not. But you still have to follow summary judgment procedure. So in a homeowner case, the roof is damaged, the insurance company comes in and puts on evidence that the roof wasn't damaged and the insurer just sits there and says nothing. On appeal, we have to look at only that evidence and say, was there any genuine issue of material fact? If there wasn't, the fact that usually you have jury trials on whether the roof was damaged doesn't help us. So that's the question you're being asked. No, but I'm trying to answer it, Your Honor. We move for summary judgment as well. We're not saying that in this case there has to be a trial, but there has to be a different standard applied to the evidence. And the question before the district court now will be, was the plan administrator right or wrong? Did she need more treatment or not? But if there's no dispute of material fact, there isn't any need for remand. The remand is if there is a dispute of material fact, then we're not the initial fact finder. We're not the fact finder at all. We just would review a fact finder. So then she would have to make credibility determinations and so forth. But you haven't pointed to that. In fact, you just said you move for summary judgment implying that you don't think there is a material issue of fact. Correct. So what is there for the judge to do? To apply the right standard, to decide whether. To do undisputed facts. Right. So why are we not able to do that? Well, I guess this court could decide whether these services were primarily for the convenience of Arianna M. or were for her treatment, if this court wants to decide that. But the problem also is that we did raise the issue of whether the additional evidence we tried to submit on that point. You did not raise that to this court. I understand that, Your Honor. However, the issue that we're arguing about requires a different nature of review. I can't say it any other way. You've got a red light. I'll give you one declarative sentence, no commas, no semicolons, to make the statement, and then you're done. The district court found that the plan administrator reviewed medical evidence. The plan administrator did not do so, and that is the fundamental problem here. All right. Thank you. All right. Thank you, counsel. Thank you, counsel on all sides. The case will be submitted. This concludes the first case.